82,778-01

**COURT OF CRIMINAL APPEALS WRIT NO.** <u>WR-82,778-01</u>

EX PARTE

DESMOND LEDET

§
§
§
§
§
§

IN THE COURT OF CRIMINAL APPEALS OF
TEXAS, IN AUSTIN, TX

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 24 2015

Abel Acosta, Clerk

**OBJECTION #4: THE TRIAL COURT'S FACT FINDINGS AND LEGAL CONCLU-
SIONS CONCERNING GROUNDS #5-19, & #22-23 ARE: (1) MISLEADING TO
THIS COURT; (2) INACCURATE; (3) INCOMPLETE;(4) IN CONFLICT WITH
COURT OF CRIMINAL APPEALS AND SUPREME COURT PRECEDENT REGARDING
THE PREJUDICE PRONG OF STRICKLAND; (5) AND BASED IN RELIANCE ON
DEFENSE COUNSEL'S NON-CREDIBLE AFFIDAVIT ASSERTION OF STRATEGY,
WHEN THAT ALLEGED STRATEGY IS IN FACT OUTRAGEOUS AND
UNREASONABLE.**

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

The Applicant, Desmond Ledet, respectfully objects to the ha-
beas trial court's adoption of the State's proposed findings of
fact and conclusions of law presented to this honorable Court as
stated above in the heading. This objection has 2 exhibits at-
tached to it that are now incorporated into this objection that
were objections filed in the trial court to defense counsel's
affidavit concerning the above said grounds. Though the Appli-
has previously filed objections to this Court, prison mail rec-
ords will show that he did not obtain the customary notice from
your Court that his 11.07 was received in this Court until Feb.
10, 2015. This objection is being filed(Prison Mailbox Rule) on
Feb. 19 ,2015. This objection is brief and the majority of it is
the exhibits **that are already part of the habeas record, incorp-
orated now herein.** In support the Applicant presents:

1: The trial court's factual findings **MISLEAD** this Court to
believe that the Second District Court appeals opinion on
direct appeal was the product of a prejudice analysis un-
der Strickland that took into account all of the unfairly
prejudicial evidence contained in the inadmissible part

p.1 of 20

**(p.8-20 are two seperate
attachments )**

of State's Exhibit 27 now raised in the writ of habeas corpus that Hon. Fortinberry failed to object to being presented to the jury because it caused the Applicant unfair prejudice as defined by Old Chief v. United States, 519 U.S. 172, 180(1997); Tex.R.Evid. 403; Hardie v. State, 807 S.W. 2d 319, 322(Tex.Crim.App.1991). See "State's Proposed...Findings...Conclusions" at p.5, ¶16— p. 6, ¶19.

2: The opinion handed down on direct appeal **NEVER ANALYZED ALL OF THE EVIDENCE THAT REPEATEDLY CAUSED THE APPLICANT UNFAIR PREJUDICE RAISED IN GROUNDS #5-19, &22 UNDER THE PREJUDICE PRONG OF "STRICKLAND"**. Compare present above said grounds never raised on direct appeal or addressed by Court of Appeals with the opinion on direct appeal.

3: The opinion handed down on direct appeal also **NEVER** engaged in a harm analysis under "Strickland" to determine whether the Applicant was prejudiced by the numerous individual parts of State's Exhibit 27 raised in Ground # 23 of the present writ that violated Applicant's MIRANDA RIGHTS, DUE PROCESS OF LAW(14th Amend.), & THE FUNDAMENTAL RIGHT TO A FAIR TRIAL.

4: In fact the opinion from the Second District Court of Appeals did not consider any harm arising from unfair prejudice **and only made mention of ONE invocation made by the Applicant to terminate the interview.** See Ledet v. State, No.02-10-00281-CR, 2013(WL 1830801,**\*4-6**(Tex.App.-Fortworth May 2, 2013, pet.ref'd)(not designated for publication).

5: The opinion on direct appeal **NEVER ANALYZED OR CONSIDERED THE SECOND PRONG OF STRICKLAND BASED ON THE COLLECTIVE UNFAIR PREJUDICE AND PREJUDICE THE APPLICANT SUFFERED DUE TO THE JURY'S VERDICT BEING ENFLUENCED WITH THE EVIDENCE IN THE ABOVE SAID GROUNDS verses THE REASONABLE PROBABILITY THE OUTCOME WOULD HAVE BEEN DIFFERENT ASIDE FROM HON. FORTINBERRY'S FAILURE TO SEEK THE EXCLUSION OF IT ALL.**

6: The opinion on direct appeal was formed based on an improper analysis **specifically only addressing Applicant's invocation to terminate the interview** that he made **DIRECTLY AFTER INTERVIEW BECAME ACCUSATIONAL.**(Once detective informed Applicant his DNA was in the complainant). Id. at * 4-7. Applicant has raised multiple other invocations in his present writ as causing him unfair prejudice.

7: The majority on direct appeal came to the conclusion the jury hearing the Applicant's **first** invocation to terminate the interview(all the others raised on 11.07 were not analayzed) was justified and not prejudicial under Strickland based on a **misapplication of Lykins v. State, 784 S.W. 2d**

32, 34-36(Tex.Crim.App.1989)  Id.

8: In short the majority opinion on direct appeal, citing Lykins, concluded that "the inadmissible part of the interview" which was played to the jury before the Applicant ever took the stand to testify "in which Appellant invoked his right to terminate it", COULD BE USED TO IMPEACH HIM.  See Ledet v. State, supra *4-7.

9: This Court in Hardie v. State, supra, and the Supreme Court in Doyle v. Ohio, 426 U.S. 610, 618-19(1976) & Wainwright v. Greenfield, 474 U.S. 284, 291(1986) have made it well established that a Constitutionally protected right/ privilege , invoked in the face of accusation, post MIRANDA warnings, made in connection with a custodial interrogation,is not admissible for impeachment purposes.

10: The Grounds now raised(#5-19, & #22 & 23)complain of evi. presented to the jury that led the jury to convict the Applicant on an "unfair" basis that had nothing to do with the elements of the alleged offense.

11: Aside from defense counsel's failure to object to the presentation of all of the unfairly prejudicial evidence raised in the above said grounds there does exist a reasonable probability the outcome of the trial would have been different, had that evidence been excluded.

12: The jury rejected the the alleged victims story that she was in the process of exiting the Applicant's vehicle when suddenly:(1) the Applicant pulled a gun, (2) pointed it at her, (3) commanded she get back in car, (4) and caused her to submit to non-consensual sex under the threat of being shot and killed with the alleged gun. See "State's Proposed...Findings...Conclusions" at p.3, ¶2; See also alleged victims testimony that was rejected by the Jury. v.5 RR, p.26-p.32; relevant also,v.4 RR, p. 18-19, State's opening argument rejected by the jury.

13: The Applicant testified that the sex was consensual and that he never had a gun, and never threatened the complainant with a gun. v.5, RR, p.110-131.

14: The Sexual Assault Nurse who examined the alleged victim testified that she had based her findings in large part only upon what the alleged victim had told her. v. 4 RR, p.72, lines 2-8.

15: Detective T.S. O'brien who(along with his partner) conducted the custodial interrogation(State's Exhibit 27) testified that other than the complainant telling him she was sexually assaulted there was no evidence that the alleged assault occured.  When asked if all he had

was her word, he testified **"YES"**. **v.5 RR, p.100 lines 16-22.**

16: As emphasized by the Applicant in the writ, the Second District Court of appeals, while analyzing **only** the Applicant's **first** invocation to terminate the interview, **never addressing the evidence now raised,** expressed that the outcome of this trial was based on who the jury chose to believe, Applicant or the alleged victim. See <u>Ledet v. State,</u> supra at p.4-7. And that DNA evidence merely confirmed that sex did occur. Id.

17: So why would a jury **who rejected** the complainant's story that she consented to a nonconsensual sexual assault under the threat of being killed with a gun,that was pointed at her, and rejected her story that she had her foot out of Applicant's vehicle exiting,until Applicant pulled a gun and commanded her to get back in,still return a **guilty verdict???**

18: Surely it was not based on her story that the jury rejected.

19: It is logical that the inadmissible evidence the jury **heard raised in the above said grounds,counsel failed to contest the admission of,is the answer to the above question, and a reasonable probability exist that aside from counsel's deficient performance in failing to object to the admission of said evidence the outcome would have been different.**

20: That evidence was never analyzed under the prejudice prong of <u>Strickland</u> on direct appeal and includes but is not limited to:

a: the jury hearing the detective in the inadmissible recording: **"WHEN YOU'RE TRYING TO COME IN WITH A CLEAN SLATE...LIKE A MAN OF GOD YOU SAY YOU ARE...THEN WHY DON'T YOU TALK TO US."** See Application, Ground #14. (p.14 <u>I</u> —15 <u>I</u>);Memorandum, p.33-45

b: the jury hearing the Applicant invoke his right to counsel 7 different times. See Application, Ground #7, #15—#19(p.14 <u>B</u> —15 <u>B</u>; & 14 <u>J</u> —15 <u>J</u>.) Memorandum, Id

c: the jury hearing the Applicant say **"I CANCEL THIS INTERVIEW" which was the L A S T** TIME OF SEVERAL TIMES THE JURY HEARD THE APPLICANT TERMINATE THE INTERVIEW. ON DIRECT APPEAL THE COURT OF APPEALS ONLY ADDRESSED THE FIRST TIME.(and not under the prejudice prong,involving "unfair prejudice"—Tex.R.Evid. 403). See Application, Ground #8(p.14 <u>C</u>—15 <u>C</u>); Memorandum, Id.

d: etc. See Application Grounds #5-19, & #22-23.

21: All of the inadmissible evidence in the above said Grounds was offered by the State as substantive evidence of Applicant's guilt, to show the jury that the Applicant had to be guilty, not credible, etc. because he stood on his rights, after receiving MIRANDA warnings.

22: Invoking MIRANDA rights is not an element of the offense the Applicant was on trial for.

23: All of the complained of evidence gave the jury numerous amounts of "unfairly prejudicial" evidence to convict the Applicant on **BESIDES THE COMPLAINANT'S STORY THAT WAS REJECTED BY THE JURY.**

24: The "unfairly prejudicial" evidence was emphasized by the State during it's arguments after the close of the evidence. See Application, Ground #21.

25: Because the jury rejected the complainant's story of being threatened with a gun, and consenting to non-consensual sex under that alleged threat, there exist a reasonable probability aside from all of the complained of error that caused the Applicant unfair prejudice, which denied him a fair trial, the outcome would have been different.

26: See **Passmore v. Estelle**, 607 F.2d 662(5th Cir. 1979)(Relief Granted for ineffective assistance when entire proceeding as a whole was fundamentally unfair.) See Memorandum, p.40.

27: Respectfully stated, **this honorable Court of Criminal Appeals of Texas should reject the State's misleading findings and comclusions concerning the prejudice prong of Strickland, in relation to above said grounds. This Court should do a de novo review of harm that is all inclusive of an analysis of the prejudice prong of Strickland involving each individual ground raised seperately and collectively.** See Applicant's Ground #34, also.

---

28: Please see both motions/objections attached and now incorporated into this objection. A copy of them should have been forwarded to this honorable Court along with the writ , etc.

29: In objection to the the trial Court's **adoption** and presentation to this Court of the State's proposed findings/ legal conclusions, **BOTH ATTACHED OBJECTIONS ARE NOW RESPECTFULLY RE-URGED IN THIS HONORABLE COURT.** See this objection, p. 8 — 10 , & p. 11 — 20 .

30: For what ever reason Hon. Fortinberry failed to **object** to all of the evidence that the Applicant invoked his constitutional rights, **it was not a reasonable trial strategy in light of this Court's precedent, and the Supreme Court precedent that makes it clear that evidence of a defendant invoking his rights, post MIRANDA, in the face of accusation, will more than likely give rise to an inference of guilt.** See legal citations in Memorandum, p.37-44; See State's proposed Findings... conclusions, at p.6, ¶20

31: The evidence the Applicant invoked his constitutional rights did not reinforce the defense the Applicant was innocent and the sex was consensual. Such a finding is highly unreasonable in light of the law.

32: See Profitt v. Waldron, 831 F.2d 1245, 1249(5th Cir. 1987)(refusing to indulge a presumption of reasonableness as to "tactical" decision that afforded no advantage to defense).

33: See the 5th Cir. asserting: "The Court is, therefore, not required to condone **unreasonable** decisions parading under the unmbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." Moore v. Johnson, 194 F.3d 586, 604(5th Cir. 1999).

34: "The **reasonableness** of a particular strategic or tactical decision **is a question of law, entitled to de novo review."** Id.

35: The evidence the Applicant invoked his constitutional rights **reinforced the State's theory that the the Applicant was guilty, and that the sex was nonconsensual.** See State's Proposed...Findings...Conclusions, p.6, ¶20.

36: The Court of Criminal Appeals held over 20 years ago it is deficient performance for a lawyer to fail to object to a comment on post arrest silence. McFarland v. State, 845 S.W. 2d824, 844(Tex.Crim.App.1992).

37: For the foregoing reasons the Applicant objects entirely to the fact findings, legal conclusions, and recommendation of the trial court concerning Applicant's Grounds #5-19, &22 & 23. See State's Proposed...Findings...Conclusions, p.16, ¶24.

## PRAYER

The Applicant, Desmond Ledet, humbly and respectfully prays this honorable Court will acknowledge these objections and enter alternative facts and legal conclusions that are trully support-ed by the record and the law. Ultimately please **GRANT** the Ap-plicant the relief he is so desperately seeking. THANKYOU.

Respectfully Submitted

*Desmond Ledet*

Desmond Ledet #01651095
Telford Unit
3899 State Hwy.98
New Boston, TX 75570

## CERTIFICATE OF SERVICE

**A** true copy of this objection has been placed in the prison mailbox at 3:00 AM, on Feb.19th, 2015 to be mailed to the Tarrant County, TX. Criminal District Attorney's Office located at 401 West Belknap, Fort Worth, TX, 76196.

*Desmond Ledet*

DESMOND LEDET

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 10 2014

TIME _4 30_
BY_____ _CSD_ DEPUTY

NO. C-396-010272-1152016-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE 396th JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| DESMOND LEDET | § | TARRANT COUNTY, TX |

**APPLICANT'S OBJECTION TO ATT. CURTIS FORTINBERRY'S AFFIDAVIT AT-
TEMPT TO RECONSTRUCT HIS GROUNDS #5-19, &23**(into 1 ground that he
was ineffective for not objecting to the police interview) **BE-
CAUSE APPLICANT CLEARLY STATED IN THE WRIT APPLICATION THAT HE
WAS NOT NOW RAISING A COMPLAINT THAT FORTINBERRY SHOULD HAVE MADE
AN OBJECTION TO THE ENTIRE RECORDING, BUT INSTEAD, THAT HE WAS IN-
EFFECTIVE FOR NOT OBJECTING TO, SUPPRESSING , OR HAVING REDACTED
ONLY CERTAIN EXCERPTS FOUND WITHIN THE AUDIO INTERVIEW**

**TO THE HONORABLE JUDGE OF THE ABOVE SAID COURT:**

The Applicant, Desmond Ledet, objecting as stated in the above

heading presents the following, after first notifying this Court

that this objection was **placed in the prison mailbox on 12-4-20-

14**(filed under prison mailbox rule). Applicant received Att. For-

tinberry's Affidavit on 11-25-2014, 2 days before mail stopped

for Thanksgiving. Applicant humbly presents:

1: See Writ Application(hereinafter "Appli.")at p.14 which is
Ground #5, in which the Applicant made it clear that he was
in no way complaining about Att. Fortinberry's failure to ob-
ject to the entire inadmissible police interview.

2: Specifically on p.14 Applicant stated: "...the 2nd Distri-
ict Court Of Appeals holding the entire section of the audio
tape that this unfairly prejudicial statement was contained
in to be inadmissible in the first place on other grounds,
**NOT RAISED NOW**"

3: See Appli. at p.15 : "Defense counsel **should have object-
ed to this EXCERPT** under Tex.R.Evid. 403, but he did not. "

4: Appli. at 14A : "...THIS GROUND AND ALL THESE GROUNDS THAT
DEFENSE COUNSEL, CURTIS FORTINBERRY WAS INEFFECTIVE FOR NOT
OBJECTING TO THE CITED **EXCERPTS** UNDER TEX. R. EVID. 403(un-
fair prejudice)"

5:See OXFORD, American Dictionary defining **"EXCERPT"** as: "a
short **extract** from a book, motion picture, peice of music,
etc." Thus, it is impossible to fairly say Applicant com-
plains counsel should have objected to the police interview,
or that all of grounds #5-19, & 23 are "essentially" that.

p.1 of 3

6: Appli. at 15A : "DEFENSE COUNSEL DID NOT REQUEST THAT THE COURT PERFORM THE BALANCING TEST UNDER TEX. R. EVID. 403. DEFENSE COUNSEL DID NOT SEEK TO EXCLUDE **THIS UNFAIRLY PREJUDI-CIAL EVIDENCE** IN ANY MANNER. NOT BY OBJECTION, MOTION TO SUPPRESS, AT ALL. NOT BEFORE TRIAL OR BEFORE IT'S PRESENTATION.

7: All of grounds #5-19, & 23 continue in being raised in the writ Application in the same manners cited above. Each ground is specific that it is only the specific excerpt, part, or portion that was in itself **unfairly prejudicial** that Att. Fortinberry was ineffective for not objecting to the presentation of being raised in these grounds.

8: Appli. at 14R : "Defense counsel also failed to object to this **particular excerpt** found within the inadmissible part of the statement under Tex.R.Evid. 403"

9: Appli. at 14R : See heading of Ground #23: "...COUNSEL WAS INEFFECTIVE UNDER THE 6th & 14th AMEND. U.S. CONST. FOR FAILING TO **OBJECT TO** THE STATE PRESENTING **THESE NUMEROUS INDIVIDUAL PARTS TO THE JURY.**"

10: also at 15R : "Defense counsel did nothing to stop **these parts** of the recording from improperly influencing the jury that Applicant was guilty on an improper basis other than the elements of the charge.

11: See Applicant's Memorandum of law from page 33-45.

12: The determination of Applicant's guilt rested entirely on the credibility of the witnesses and Att. Fortinberry's deficient performance undermined applicant's credibility which was at the very heart of his defense, the implication that Applicant was guilty and uncredible simply because he invoked his rights did not come before the jury once, BUT A MULTITUDE OF TIMES. Att. Fortinberry <u>entirely failed to provide a reasonable trial strategy in his Affidavit for not objecting to the **excerpts** cited in grounds #5-19, 23 being presented to the jury.</u> Instead he tried to artfully sidestep addressing those grounds by reconstructing them into a single ground that he thought might fit into his alleged strategy. **FOR FOREGOING REASONS I OBJECT TO HIS RECONSTRUCTION OF MY( the Applicant) GROUNDS.** Indeed, his reconstructive tactic, and his need to attempt such reconstruction in order to try to defeat the individual grounds emphasizes the fact that there was no reasonable trial strategy.

13: The only significance that the 2nd District Court Of Appeals held on direct Appeal that the actual entire part of the recording these excerpts are found in was inadmissible in the first place lies in the fact that: <u>Lyons v. McCotter,</u> 770 F.2d 529, 534(5th Cir.1985)(holding that **permitting the admission of prejudicial and inadmissible evidence has no strategic value).** Fortinberry has proven that.

Respectfully Submitted,

p.2 of 3

p.9 of 20

Desmond Ledet #01651095
Telford Unit
3899 State Hwy.98
New Boston, TX 75570

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing objection has been sent by U.S. mail to the Tarrant County Criminal District Attorney's Office(Appelate section) located at 401 W. Belknap, Fort Worth, TX.   It was placed in the prison mailbox under the "PRISON MAIL BOXRULE" on 12-04-2014.

Desmond Ledet

## UNSWORN DECLARATION

I, Desmond Ledet, #01651095, am presently incarcerated at the Telford Unit in Bowie County, TX.   I declare under penalty of perjury that the facts stated in this document are true and correct.

Executed on 12-4-2014

Desmond Ledet

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 04 2014

TIME_____
BY_____
_____DEPUTY

NO. C-396-1152016-A

EX PARTE

§

§

§

§

§

IN THE 396th JUDICIAL

DISTRICT COURT OF

DESMOND LEDET

TARRANT COUNTY, TX

## APPLICANT O B J E C T S TO CURTIS FORTINBERRY'S AFFIDAVIT; SPECIFICALLY IN THIS OBJECTION CONCERNING GROUNDS #5-19,& #23; APPLICANT OBJECTS TO HIS IMPERMISSIBLE ATTEMPT TO CENTRALIZE HIS GROUNDS #5-19,& #23 INTO ONE CONGLAMORATED GROUND RAISING A GROUND APPLICANT NEVER RAISED IN HIS WRIT; AMONGST OTHER OBJECTIONS

TO THE HONORABLE JUDGE OF THE ABOVE SAID COURT:

Applicant, Desmond Ledet, respectfully presents this honorable Court with the following **OBJECTIONS** to Curtis Fortinberry's Affidavit which fails to even address Applicant's Grounds #5-19, &#23 in the manner that he raised them in his writ. Instead Fortinberry has craftily reduced #5-19, &#23 into one Ground that Applicant **NEVER RAISED IN HIS WRIT.** Amongst other objections, Applicant respectfully presents the following:

1: The Applicant strongly objects to Defense Counsel's attempt to **centralize** his Grounds #5-19, & #23 into essentially one Ground, asserting in his Affidavit that all of those grounds are, as he put it("essentially the same thing, that I was ineffective for not objecting to the police interview").

2: If these grounds that Fortinberry attempts to reduce into one ground were "essentially" all the same, and contending he was ineffective for not objecting to the State's presentation of the **ENTIRE audio interrogation being presented to the jury**, then the Applicant would have simply raised one ground on that singular issue entitled: DEFENSE COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO THE PRESENTATION OF THE POLICE INTERVIEW

3: There is no need for that. The State already conceded that only the first 25 pages were admissible. And on direct appeal the Court of Appeals agreed that after Applicant terminated the interview it was inadmissible.

Applicant's grounds are much deeper than that and complain only that regardless of Fortinberry's alleged strategies for not contesting the inadmissible recordings admittance before the jury, he was ineffective for not objecting to,seeking re-

p.1 of 8   on grounds #5-19,23 (a page Exhibit attached)

daction, or suppression of, the individual **distinct and se**perate portions that pop up here and there throughout the inadmissible recording that feature on one line or two, here and there:

a) The Applicant invoking his 5th Amend. right to silence.
b) The Applicant on 7 seperate and distinct occasions invoking his right to counsel.
c) The Applicant repeatedly invoking his right to terminate the interview.
d) The detectives blatantly verbally expressing to the Applicant that he had to be guilty since he chose to stand on the above said rights, **instead of talking to them and explaining** to them how his DNA got in the alleged victim , even after he had already terminated the interview. (See Ground #14, &23)
e) The detectives repeating Applicant's actual invocations and emphasizing the fact that he made them **as if he was a bad guy for doing so. Or guilty for doing so.** Or not coming in with a "clean slate".

4: **As will be** shown below and proven by an attachment to this objection of pages from the original unredacted transcript of the audio interrogation, portions of the recording were in fact redacted prior to it being played to the jury at trial. It was not necessary to suppress the entire recording in order to redact those portions in which the Applicant mentioned his criminal history. Nor did Applicant at any time contend that counsel should have made an attempt to redact, suppress, or object to the entire recording in order to prevent the jury from hearing the individual portions he was ineffective for not protesting the admission of before the jury in Grounds #5-19, & #23.

In support of this objection Applicant points the Tribunal to Lajoie v. State, 237 3d 345(2007). In "Lajoie' at 352 the Court said: "Lajoie argues that the court's refusal to suppress the **portions** of the video in which he requests and mentions an attorney was error. **We agree**" Att. Fortinberry alleges that he had a strategy behind not objecting to the audio police interview. He

claims he wanted the jury to hear how Applicant: "continued to maintain in innocence...in spite of the persistence of the detectives". The inadmissible recording does feature certain parts in which in spite of relentless interrogation Applicant says: You got the wrong dude **(or something similar to that in one way or another). BUT THE APPLICANT HAS NOT EVEN ONE TIME EVER ACCUSED DEFENSE COUNSEL FOR BEING INEFFECTIVE FOR NOT OBJECTING TO THOSE PORTIONS OF THE RECORDING NOT BEING REDACTED FROM THE RECORDING.**

**Applicant repeatedly cited "Lajoie" in the memorandum of law attached to his writ in support of his Grounds #5-19, &23.** See the index of authorities in the memorandum on p.X, and p.36, 37 and 42 where Applicant argues "Lajoie" im support of his grounds.

In "Lajoie" at 353 the Court said:

> "we cannot say that the State had a distinct need for this evidence in light of **other portions** **of the video which offer** just as much probative evidence of Lajoie's speech pattern.

Defense counsel alleges(however falsely) that he had a strategy in not objecting to the portions in which Applicant maintained his innocence. Those portions and that alleged strategy **is irrelevant** in light of the fact that he had no **"distinct need"** for the evidence he is ineffective for not objecting to the presentation of before the jury raised in Grounds #5-19, &23.

Because "Lajoie" was only complaining about the portions he "requests and mentions an attorney", and not the "other portions" (equivalent to the portions Applicant is not complaining about in which he maintains innocence in the face of police badgering) the Court reversed "Lajoie's" conviction holding that:

"Furthermore, **we believe that presenting the jury with this evidence**"(referring only to the portions where Lajoie reque-sted a lawyer)**"certainly could lead to a decision on an im-proper basis, i.e. anyone who immediately and repeatedly ask for an attorney must be guilty.** As such, this evidence has a tendency to be given undue weight by the jury in de-ciding Lajoie's guilt. Therefore we hold that the evidence of Lajoie mentioning an attorney was inadmissible because the probative value was substantially outweighed by the danger of unfair prejudice. See **Tex.R.EVID. 403**"

"Lajoie", at 353.

THE ONLY DIFFERENCE BETWEEN "LAJOIE's" grounds and Applicant's is that the Applicant raises his in the context of ineffective assistance of counsel, and the amount of times this type of er-ror occured do to Fortinberry's deficient performance far exce-eds the few times it prejudiced "Lajoie". Even in "Lajoie" the Court found the few times the evidence went before the jury to be "multiple" times which definately prejudiced him.

In **objection** to Fortinberry's alleged strategy presented in his Affidavit, the Applicant heavily emphasizes that the "Lajoie" Court emphasized, referring to the portions of the video "Lajoie" did not raise in his grounds, that : **"Morever, there was adequate dialog by Lajoie throughout the video that did not involve him asking for an attorney from which the jury could have observed his speech pattern."** Id., at 353. That same reasoning equally Applies here. A simple reading of the Transcription of State's Exhibit 27 reveals that it would have logically flowed well still allowing the jury to repeatedly hear Applicant proclaim he was innocent,or he did not do it, or they had the wrong dude, had the multiple portions that caused Applicant unfair prejudice been redacted. Had that been done defense counsel's alleged strategy

would not have been interrupted.

Indeed, the portions of the recording in which Applicant mentioned his criminal history was redacted and it still flowed well without interrupting the understanding of what was being said at all. The Transcription of State's Exhibit 27 is the redacted version, that was presented by the jury at the trial. State's Exhibit 27A is the original version prior to redaction. In the original version(27A) which is now attached to this objection motion labeled "PROOF OF REDACTION,EXHIBIT A", on page 18, starting at the second ½ of line 7 until line 17, the Applicant explained to his interrogator's that he was in jail at 18 and he found Christ at that time while locked up for a burglary and for trying to sell some dope. That portion is redacted. Please compare that page of the original with p.18 of the Transcription of States Exhibit 27. The Applicant provided the entire State's Exhibit 27(redacted version played at trial) as "EXHIBIT G" in the Appendix of the memorandum of law filed attached to his 11.07 Application. Also on the next page of the original also attached to this objection as p.2 of "PROOF OF REDACTION, EXHIBIT A" , at p. 19 lines 8-12. Applicant says: "I skipped out of community service, man." That is also redacted out of Trans.S.Ex.27(played at trial) between line between the second half of line 21 & line 22, on page 18. Please see it and compare.

**BY ALLEGING THAT APPLICANT raised a ground that he did not, presenting an alleged strategy to justify that unraised ground, DEFENSE COUNSEL HAS ENTIRELY FAILED TO PRESENT TO THIS COURT A REASONABLE TRIAL STRATEGY TO JUSTIFY NOT OBJECTING TO THE ADMIS-**

**SION/PRESENTATION BEFORE THE JURY OF THE EVIDENCE COMPLAINED A-**

**BOUT IN GROUNDS #5-19, & 23. FOR THAT REASON ALSO APPLICANT**

**A G A I N   O B J E C T S.**

5: Each ground is seperate and distinct and must be reviewed in-
dividually not conglamorated into one ground as Fortinberry sug-
gest. applicant **o b j e c t s** to Fortinberry's artful & crafty
insinuation that these grounds be reduced to one ground. One of
Applicant's 7 invocations to counsel, is entirely distinct from
ground #14 for example when that portion features the detectives
alleging Applicant must be guilty (not coming in with a "clean
slate") for refusing to talk or give an explaination, etc.

6:   Also:

> a) Fortinberry never argued during opening or closing argu-
> ments that Applicant had to be innocent simply because he
> maintained his innocence during that interrogation.

> b) On the other hand the State made heavy argument to the
> fact Applicant invoked his rights and refused to give an ex-
> planation of why his DNA was in the alleged victim after he
> invoked his rights to terminate the interview. See Applicant-
> 's Ground #21(emphasizing the error in Grounds #5-19, #23)

> c) Fortinberry's allegations that the Applicant knew he would
> use the audio recording before trial to let the jury hear him
> maintain his innocence is false. **Such an erroneous strategy**
> **was never discussed with the Applicant.**

> d) **Fortinberry did not present the recording, it was the**
> **State. Fortinberry told the Applicant at trial that he had**
> **never listened to it prior to hearing for the first time at**
> **trial. See Ground 33.**

**APPLICANT OBJECTS FOR THOSE REASONS ALSO TO FORTINBERRY'S EN-**

**TIRE AFFIDAVIT RESPONSE TO GROUNDS #5-19, &23.** The same goes for

his Affidavit concerning Grounds #20-26.  He has not been honest.

7:   The CCA in McFarland v. State, held over 20 years ago, it is

deficient performance for a lawyer to fail to object to a comment on silence.845 S.W. 2d 824,844(Tex.Crim.App.1992). In <u>Winn v. State</u>, the Court said: **"we can not understand how that video tape could possibly assist appellant or fit into a sound trial strategy."** 871 S.W. 2d 756,764(Tex.App.—Corpus Christi 1993)(finding a defense attorney ineffective for introducing a video that contained defendant invoking his right to counsel and refusing to answer questions). See <u>Alston v. Garrison.</u> **"Few mistakes by a criminal defense counsel are so grave as the failure to protest evidence that a defendant excercised his right to remain silent.**

See <u>Moore v. Johnson,</u> 194 F.3d 586, 804(5th Cir.1999) "The Court **is not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all.**" See <u>Profitt v. Waldron,</u> 831 F.3d 2d 1245, 1248(5th Cir.1987)(Strickland's measure of deference "must not be watered down into a disguised form of acquiescence."); id. at 1249(**refusing to indulge presumption of reasonableness as to "tactical" decision that afforded no advantage to the defense)** As far as an advantageous tactical decision for not contesting the evidence presented in Grounds #5-19, &23) **defense counsel has entirely failed to present one.**
FOR THE FOREGOING REASONS APPLICANT OBJECTS TO HIS AFFIDAVIT.

Respectfully submitted,

Desmond Ledet  #01651095
3899 State Hwy.98
New Boston, TX  75570

**p.7 of 8 on  grounds #5-19, 23**

## CERTIFICATE OF SERVICE

I, Desmond Ledet, certify that the original and two copies of this objection have been hand delivered to the Tarrant County, TX. Criminal District Clerks Office with instructions for the Clerk to file original with the 396th Judicial District Court of Tarrant County, TX; and to file one copy with the appellate section of the District Attorney's Office in Tarrant County, TX.

_Desmond Ledet_
Desmond Ledet

## UYNSWORN DECLARATION

I, Desmond Ledet, #01651095, am **presently** incarcerated at the Telford Unit in Bowie County, TX. I declare under penalty of perjury that the facts stated in this document are true and correct.

_Desmond Ledet_
Desmond Ledet

Applicant received Fortinberry's Affidavit on Nov.25th, 2014, 2 day's prior to Thanksgiving. Mail did not run onThanksgiving. Prison mail also does not run on Saturday's

Q    Were you doing that back in West Virginia?

A    No.

Q    What did you --

A    No, no.  I've been a Christian for quite some time, but I hadn't -- I hadn't came all the way full -- full -- the Lord Jesus Christ called me out a long time ago when I - I was 18 years old.  I was -- I was in jail --

Q    Okay.

A    -- when I found Christ.

Q    And I didn't believe in (unintelligible) at that time.

A    Way back -- this is burglary, man.

Q    Yeah.

A    But this was some stupid kiddie stuff.  Burglary and trying to sell some dope.  I mean, but, I mean, you can check my record.  Check it out.

I did not come full-fledge with Christ until -- the Bible says that he's just and faithful to finish the work that he began within you.

Q    That's right.

A    So it was over time that he began that work in me.  I been walking clean and straight with the Lord for quite some time.

Q    How long is quite some time?

A    Quite some time, I'd say probably about --

Q    2005? 2006?

A    No. I been walking perfectly, perfectly clean and straight with the Lord probably for about two years.

Q    Two years. Man, I tell you right now I applaud you for that. I mean, because, man, it takes a lot -- a lot of people don't understand about religion.

A    I skipped out of community service, man. I got (unintelligible).

Q    And we got all day to talk --

(Indistinguishable)

A    That's what I'm getting in for right now.

Q    And, you know, here's the (unintelligible). I really applaud you for that because the fact about religion is people go for religion and they think it's -- they expect it to be easy. You know what, and the thing is --

A    I can do all things through Christ. I tried to do it on my own.

Q    -- struggle.

A    I tried to -- I tried to walk with Christ by my own will, by my own power. I have desire in my heart to serve the Lord correctly, but I tried to do it on my own strength. And I had to learn that I had to humble myself in the sight of the living God and allow him to possess

p.2